# JONES DAY

222 EAST 41ST STREET • NEW YORK, NEW YORK  10017.6702

TELEPHONE: +1.212.326.3939 • FACSIMILE: +1.212.755.7306

Direct Number:  (212) 326-3429
trgeremia@JonesDay.com

JP003870  
836128-600120

August 10, 2012

**BY ELECTRONIC FILING**

The Honorable Brian M. Cogan  
United States District Judge  
United States District Court for the Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, New York 11201

Re: Roman Catholic Archdiocese of New York et al v. Sebelius et al., No. 1:12-cv-02542-BMC (E.D.N.Y.)

Dear Judge Cogan:

We represent the Plaintiffs in the above-captioned proceeding.  Further to Your Honor's Order of June 28, 2012, we hereby submit this letter in opposition to Defendants' request to stay discovery pending adjudication of Defendants' recently filed motion to dismiss.  As contemplated by the parties and ordered by Your Honor, Plaintiffs will separately file papers in opposition to Defendants' motion to dismiss by August 27, 2012, and in that paper Plaintiffs will present their full argument as to the merits.  Here, Plaintiffs briefly address the merits to show that the request for a stay of discovery should be denied.

**I.     INTRODUCTION**

This case concerns important rights to religious freedom protected by our Founders under the First Amendment, and assured by Congress under the Religious Freedom Restoration Act.  Defendants, the U.S. Departments of Health and Human Services, Labor, and Treasury, and their respective Secretaries, have finalized a regulation that requires employer health plans to offer coverage for, *inter alia*, abortion-inducing drugs, contraception, sterilization, and related counseling (the "Mandate").  *See* 45 C.F.R. § 147.130(a)(1)(iv).  Plaintiffs, as entities affiliated with the Roman Catholic Church, cannot subsidize those services or speech in conformity with their religious beliefs.  And despite many calls for a reasonable conscience clause, Defendants' final rule limits the Mandate's exemption to entities that Defendants deem sufficiently "religious" by, among other things, primarily employing and serving people who share the same tenets of faith.  Plaintiffs cannot seek to meet the exemption's definition without violating their religious duty to serve people of all faiths.

ALKHOBAR   •   ATLANTA   •   BEIJING   •   BOSTON   •   BRUSSELS   •   CHICAGO   •   CLEVELAND   •   COLUMBUS   •   DALLAS   •   DUBAI  
DÜSSELDORF   •   FRANKFURT   •   HONG KONG   •   HOUSTON   •   IRVINE   •   JEDDAH   •   LONDON   •   LOS ANGELES   •   MADRID  
MEXICO CITY   •   MILAN   •   MOSCOW   •   MUNICH   •   NEW YORK   •   PARIS   •   PITTSBURGH   •   RIYADH   •   SAN DIEGO  
SAN FRANCISCO   •   SÃO PAULO   •   SHANGHAI   •   SILICON VALLEY   •   SINGAPORE   •   SYDNEY   •   TAIPEI   •   TOKYO   •   WASHINGTON

The Hon. Brian M. Cogan
August 10, 2012
Page 2

In connection with their motion to dismiss, Defendants seek a blanket stay of all discovery while at the same time raising a fact-intensive defense concerning what Defendants are purportedly doing to respond to concerns raised by Plaintiffs and others regarding Defendants' implementation of the Mandate. Defendants cannot demonstrate good cause as to why crucial information central to the parties' claims and defenses should be shielded from Plaintiffs.

Defendants repeatedly assert that the safe harbor provisions and possible changes to the relevant law deprive Plaintiffs of standing and make their claims unripe for adjudication. Leaving aside for the moment that such arguments go to *mootness* and not standing and ripeness, the Defendants' failure to adequately address the objections of faith-based institutions in finalizing the Mandate as it is currently enacted provides little reason to believe that any potential future changes will actually be undertaken or, if they are, will accommodate Plaintiffs' sincerely held religious values. Defendants' arguments in favor of dismissal essentially amount to the statement: "Trust us, changes are coming." Such unverifiable claims are insufficient grounds for dismissal.

In sum, Defendants have failed to affirmatively demonstrate, as they must, that a stay of discovery is appropriate.

## II. BACKGROUND

### A. The Final Mandate and Religious-Employer Exemption

In March 2010, Congress passed the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 (2010), and the Health Care and Education Reconciliation Act, Pub. L. No. 111-152, 124 Stat. 1029 (2010) (collectively, "Affordable Care Act" or "Act"). The Act requires employer "group health plan[s]" to cover women's "preventive care and screenings . . . as provided for in comprehensive guidelines supported by the Health Resources and Services Administration" ("HRSA"), an agency within Defendant HHS. 42 U.S.C. § 300gg-13(a)(4).

On July 19, 2010, Defendants issued interim final rules to implement this provision. *See* Interim Final Rules for Group Health Plans and Health Insurance Issuers Relating to Coverage of Preventive Services, 75 Fed. Reg. 41,726, 41,730 (July 19, 2010). The rules required a health plan "[to] provide coverage for . . . [women's] preventive care and screenings provided for in comprehensive guidelines supported by [HRSA]." *Id.* at 41,759 (codified at 45 C.F.R. § 147.130(a)(1)(iv); 26 C.F.R. § 54.9815-2713T(a)(1)(iv); 29 C.F.R. § 2590.715-2713(a)(1)(iv). HHS was charged with developing these guidelines, *see id.* at 41,731, which would apply one year after issuance, *see id.* at 41,729. HHS, moreover, promulgated these rules without undertaking notice-and-comment rulemaking, explaining that "to allow plans and health insurance coverage to be designed and implemented on a timely basis, regulations must be published and available . . . well in advance." *Id.*

JONES DAY

The Hon. Brian M. Cogan
August 10, 2012
Page 3

Over a year later, on August 1, 2011, HHS issued a press release announcing its "preventive care" guidelines, again without notice-and-comment rulemaking. Affordable Care Act Ensures Women Receive Preventive Services at No Additional Cost, *available at* http://www.hhs.gov/news/press/ 2011pres/08/20110801b.html. The guidelines require health plans to cover "approved contraceptive methods, sterilization procedures, and patient education and counseling for all women with reproductive capacity," *see* Health Res. Servs. Admin., Women's Preventive Services: Required Health Plan Coverage Guidelines, http://www.hrsa.gov/womensguidelines/, certain of which include drugs that can cause an abortion. By this press release, Defendants issued the Mandate, requiring health plans to cover abortion-inducing drugs, contraceptives, sterilization, and related speech for all plan years beginning after August 1, 2012.

In response to objections to requiring religious entities to cover services contrary to their beliefs, Defendants issued a narrow exemption to the Mandate for "religious employers"—*i.e.*, an organization that (i) has as its purpose the "inculcation of religious values"; (ii) "primarily employs persons who share [its] religious tenets"; (iii) "serves primarily persons who share [its] religious tenets"; and (iv) "is a nonprofit organization" as described in certain relevant sections of the Internal Revenue Code. Group Health Plans and Health Insurance Issuers Relating to Coverage of Preventive Services, 76 Fed. Reg. 46,621-46,626 (Aug. 3, 2011) (codified at 45 C.F.R. § 147.130(a)(1)(iv)(A)-(B)).

On January 20, 2012, after purportedly reviewing comments critical of the unprecedentedly narrow exception, Defendants issued another press release rejecting any suggested changes. The press release, however, provided that "[n]onprofit employers who, based on religious beliefs, do not currently provide contraceptive coverage in their insurance plan, will have an additional year, until August 1, 2013, to comply with the new law." A Statement by U.S. Department of Health and Human Services Secretary Kathleen Sebelius, *available at* http://www.hhs.gov/news/press/2012pres/01/20120120 a.html. As noted by Cardinal Timothy Dolan of the Archdiocese of New York, the release effectively gave objecting religious institutions "a year to figure out how to violate [their] consciences."

On February 10, 2012, Defendants finalized, "without change," the amendment to the interim final rules at 45 C.F.R. § 147.130(a)(1)(iv), *see* Group Health Plans and Health Insurance Issuers Relating to Coverage of Preventive Services, 77 Fed. Reg. 8725, 8728, 8730 (Feb. 15, 2012), and reiterated that the one-year safe harbor would apply to a non-exempt organization if it certifies that it is a non-profit that has not offered the services and notifies participants in its plan of the lack of coverage, *see* Ctr for Consumer Info. & Ins. Oversight, Guidance on Temporary Enforcement Safe Harbor (Feb. 10, 2012), *available at* http://cciio.cms.gov/resources/files/Files2/02102012/20120210-Preventive-Services-Bulletin.pdf.

JONES DAY

The Hon. Brian M. Cogan
August 10, 2012
Page 4

    **B.**    **Potential Changes to Existing Law**

When Defendants finalized the amendments to 45 C.F.R. § 147.130(a)(1)(iv), the White House simultaneously announced that it intended to change the regulations. It suggested an "accommodation" under which insurers of non-exempt organizations "will be required to directly offer . . . contraceptive care [to participants] free of charge." White House, Fact Sheet: Women's Preventive Services and Religious Institutions (Feb. 10, 2012), *available at* http://www.whitehouse.gov/the-press-office/2012/02/10/fact-sheet-women-s-preventive-services-and-religious-institutions. Commentary accompanying the final rule thus noted that "they plan[ned] to develop and propose changes to [their] final regulations" before August 1, 2013—the date on which the safe harbor period will expire. 77 Fed. Reg. at 8727.

On March 16, 2012, Defendants issued an Advance Notice of Proposed Rulemaking ("ANPRM") purportedly seeking comments on how to structure the "accommodation." Certain Preventive Services Under the Affordable Care Act, 77 Fed. Reg. 16,501 (Mar. 21, 2012). The ANPRM, however, contains little more than a recitation of "possible approaches." *Id.* at 16,507. The ANPRM offers almost no analysis of the relative merits of the various proposals, all of which would still force Plaintiffs to subsidize, facilitate, and/or accommodate treatments, procedures, and speech that violate their sincerely held and Constitutionally protected beliefs. *See* Compl. ¶¶ 141-145. Notably, Defendants have yet to announce any proposed changes to 45 C.F.R. § 147.130(a)(1)(iv).

**III.**    **ARGUMENT**

A party seeking a stay of discovery "bears the burden of showing good cause." *State Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C.*, No. 2007-cv-0051(ENV)(MDG), 2007 WL 2908205, at *1 (E.D.N.Y. Oct. 4, 2007). "The pendency of a dispositive motion is not, in itself, an automatic ground for a stay." *Id*; *In re WRT Energy Secs. Litig.*, No. 96 Civ. 3610 (JFK), 1996 WL 580930, at *1 (S.D.N.Y. Oct. 9, 1996) ("While discovery may in a proper case be stayed pending the outcome of a motion to dismiss, the issuance of a stay is by no means automatic."). "Rather, a court determining whether to grant a stay of discovery pending a motion must look to the particular circumstances and posture of each case." *Id*.

A stay of discovery pending a dispositive motion is the exception not the rule. As Defendants acknowledge, courts consider the following factors in determining whether a stay is appropriate: (i) whether the defendant has made a strong showing that the plaintiff's claim is unmeritorious; (ii) the breadth of discovery and the burden of responding to it; and (iii) the risk of unfair prejudice to the party opposing the stay. *See Alford v. City of New York*, No. 11-cv-622, 2012 WL 947498, at *1 (E.D.N.Y. Mar. 20, 2012). "Discovery should be stayed, however, only when there are no factual issues in need of further immediate exploration and the issues before

The Hon. Brian M. Cogan
August 10, 2012
Page 5

the Court are purely questions of law that are potentially dispositive . . . ." *Hachette Distrib., Inc. v. Hudson County News Co.*, 136 F.R.D. 356, 358 (E.D.N.Y. 1991).

Defendants have failed to carry their burden under this legal standard for getting a blanket stay of all discovery pending a decision on their motion to dismiss. *See State Farm*, 2007 WL 2908205, at *1.

### A. Defendants Have Not Made a "Strong Showing" That Plaintiffs' Case Is Without Merit

First, Defendants' have not made the requisite "strong showing" that they will prevail on their motion to dismiss. The Complaint meets the relevant pleading standards and, thus, Defendants motion to dismiss lacks merit.

Defendants argue both that Plaintiffs lack a sufficient injury for standing and that their challenge is unripe, because Defendants have indicated that they will change their final rule before August 1, 2013, and have issued a temporary safe harbor from government enforcement for entities like Plaintiffs in the interim. With respect to standing, Plaintiffs have not, contrary to Defendants' argument, failed to make the minimal showing necessary "where First Amendment rights are involved." *See Bloedorn v. Grube*, 631 F.3d 1218, 1228 (11th Cir. 2011). Indeed, the "[Supreme] Court has allowed challenges to go forward [in separate cases] even though the complaints were filed almost six years and roughly three years before the laws [at issue] went into effect." *Thomas More Law Ctr. v. Obama*, 651 F.3d 529, 537 (6th Cir. 2011), *abrogated on other grounds by Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S.Ct. 2566 (2012). Here, by contrast, all of the religious and economic harms that will befall Plaintiffs from the Mandate are, at most, a little over a year away. And Defendants' current non-binding plan to change the law does nothing to eliminate the impending injury, as Defendants "confuse mootness with standing." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).

Regardless, Defendants overlook a discrete injury that itself suffices under Article III: "the present impact of a future though uncertain harm may establish injury in fact for standing purposes." *Lac Du Flambeau Band of Lake Sup. Chippewa Indians v. Norton*, 422 F.3d 490, 498 (7th Cir. 2005). As Plaintiffs will show in detail in their opposition to the motion, the Mandate caused a wide variety of present impacts on Plaintiffs, including forcing them to prepare for potentially onerous fines, forgoing cost-saving measures, and precluding them from appropriately structuring their future health plans. Both the imminent injuries from the Mandate and the actual injuries that it is currently imposing on Plaintiffs suffice to establish Article III injury. *See Newland v. Sebelius*, No. 1:12–cv–11232012, WL 3069154, at *4 (D.Colo. July 27, 2012) (finding imminent irreparable harm and granting preliminary injunction based on similar claims as here "[i]n light of the extensive planning involved in preparing and providing [an]

JONES DAY

The Hon. Brian M. Cogan
August 10, 2012
Page 6

employee insurance plan, and the uncertainty that this matter will be resolved before the coverage effective date").

Defendants also rely on the safe harbor and non-binding intentions to change the law in arguing that Plaintiffs' challenges are unripe for review. But again, Defendants ignore the courts' special solicitude for protecting First Amendment rights. And even if this action did not implicate such rights, Plaintiffs claims would still be ripe. Plaintiffs satisfy both factors of the prudential-ripeness test: they present discrete legal challenges to final agency action and, as Plaintiffs will show in their opposition, their hardships from delay in adjudicating this dispute are considerable given the present impacts on their operations. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967). Defendants' argument that their final rule is not really "final" because they might change it in a future rulemaking ignores that "the mere contingency that [an agency] might revise the regulations at some future time does not render premature [a] challenge to the existing requirements." *Albertson v. Subversive Activities Control Bd.*, 382 U.S. 70, 77 (1965). Instead, their argument is, once again, a mootness claim and, as Defendants are keenly aware, future plans to change the law cannot suffice to moot this suit. *See, e.g., CSI Aviation Servs., Inc. v. U.S. Dep't of Transp.*, 637 F.3d 408, 414 (D.C. Cir. 2011) (finding challenge to agency action justiciable even though the plaintiff was granted a temporary exemption and the agency had proposed a rulemaking).

Because Defendants rushed to issue the Mandate in a final, binding form that has impacted Plaintiffs' current operations, the suit is ripe. For these reasons, and those that will be set forth in further detail in Plaintiffs' opposition to the motion to dismiss, Defendants have not sufficiently demonstrated that Plaintiffs' claims will likely be dismissed. For this reason alone, the Court should deny Defendants' application for a stay. *See In re WRT Energy*, 1996 WL 580930, at *1 (declining to stay document discovery since "a preliminary review of the complaint does not lead the Court to the conclusion that this action . . . was filed to enable Plaintiffs to embark on the proverbial 'fishing expedition' to uncover information" as the "complaint contains numerous specific factual allegations contradicting such a characterization" and "the Court cannot conclude on the present record before it that dismissal of the complaint is inevitable").

### B. Defendants Have Not Sufficiently Demonstrated That Discovery Would Be Burdensome

Second, Defendants have not carried their burden to show that the scope of discovery would be unduly burdensome. Discovery will not be burdensome in this action as the relevant information relates only to the discrete portions of the Affordable Care Act and Mandate at issue here. Defendants have offered no explanation as to how discovery in this case would be burdensome to them. Nor have they demonstrated that a blanket stay of discovery is warranted, let alone required, in this case. *See State Farm*, 2007 WL 2908205, at *4 ("[N]otwithstanding

their complaint that discovery would be onerous, the moving defendants have not shown *how* they will be unduly burdened by having to respond for interrogatories and production of documents," particularly since "at this juncture, the Court [can] make[] no determination as to whether particular document requests or interrogatories are overbroad or unduly burdensome." (emphasis added)).

The sole argument Defendants offer is the general proposition that government officials ought not be burdened by unreasonable discovery demands. Defendants rely on *Community Federal Savings And Loan Association v. Federal Home Loan Bank Board*, 96 F.R.D. 619, 621 (D.D.C. 1983)). But in that case discovery was stayed because plaintiffs failed to show that the documents already available to them were inadequate and that the individuals sought to be deposed had "unique personal knowledge concerning the decision" at issue that could not be ascertained from interrogatories, a single designated official, or other available and uncontested witnesses. *Id*. at 621-22. Here, of course, none of these alternative methods of discovery have been offered to Plaintiffs. Instead, Defendants seek an unjustifiable blanket ban on all discovery merely on the assertion that they have found themselves having to defend the Mandate and the Affordable Care Act on multiple fronts. *See* Def's. Mot. to Dismiss at 24 n.10. This argument does not show that any and all discovery, which pursuant to Court directive has not yet been requested, is necessarily unduly burdensome. *See State Farm*, 2007 WL 2908205, at *4.

      **C.**      **Plaintiffs Will Be Unfairly Prejudiced Absent Discovery**

Third, the risk of unfair prejudice to Plaintiffs in not permitting discovery at this stage is great as Defendants have put squarely in issue their purported plans to alter the Mandate in such a way as to materially affect Plaintiffs' instant claims and address Plaintiffs' objections. Defendants argue that Plaintiffs' claims cannot be adjudicated, in part, because "defendants published an advance notice of proposed rulemaking ("ANPRM") in the Federal Register that confirms defendants' *intent* . . . to *propose* and finalize additional amendments to the preventive services coverage regulations to further accommodate non-exempt, non-grandfathered religious organizations' religious objections to covering contraceptive services." Def's. Mot. to Dismiss at 2 (emphasis added). Nevertheless, as Defendants further elaborate, the ANPRM does no more than "suggest[] ideas and solicit[] public comment on *potential* accommodations." *Id*. (emphasis added).

In an attempt to meet their burden, Defendants do no more than state that Plaintiffs will not be harmed by a stay of discovery because, in their view, the effects of the Mandate will not impact Plaintiffs for 17 months. *See id*. at 24 n.10. But, Plaintiffs cannot simply "wait and see," presuming Defendants' uncertain changes to the Mandate will accommodate their objections. Rather, as Plaintiffs will show in detail in their opposition to the motion to dismiss, because of circumstances as they are, Plaintiffs have already begun the necessary planning occasioned by the finalized and currently enacted regulations. *Cf. Newland*, WL 3069154, at *4 (finding

JONES DAY

The Hon. Brian M. Cogan
August 10, 2012
Page 8

imminent irreparable harm due to "the extensive planning involved in preparing and providing [an] employee insurance plan, and the uncertainty that this matter will be resolved before the coverage effective date"). Having raised as a defense what Defendants are purportedly doing to accommodate concerns by Plaintiffs and others concerning the Mandate, Defendants should not now be permitted to completely foreclose discovery of all facts relating to the regulations as they are currently constituted and as they may (or may not) be altered.

Moreover, at the heart of Plaintiffs' contentions is their assertion that the narrow definition of "religious employer"—which is limited to religious entities that, unlike Plaintiffs, primarily serve and employ people who share the same tenets of faith—was adopted with discriminatory intent. In addition, Plaintiffs challenge the process by which Defendants have issued (and may potentially alter) the Mandate and the consequences of those decisions on Plaintiffs' First Amendment rights. The ANPRM, however, does not even purport to address the narrow definition of "religious employer." Nor does it (or could it) address the past defects in the process by which that definition and the Mandate generally were originally adopted.

In similar cases dealing with attempts by government officials to shield disclosure of information relating to their decisionmaking processes under the so-called deliberative process privilege, courts have consistently held that, where a plaintiff's First Amendment claim "is directed at the government's intent in rendering its policy decision," the privilege from disclosure "evaporates." *Children First Foundation, Inc. v. Martinez*, No. 1:04-CV-0927, 2007 WL 4344915, at *7 (N.D.N.Y. Dec. 10, 2007). Indeed, "[t]he historical and overwhelming consensus and body of law within the Second Circuit is that when the decision-making process itself is the subject of the litigation," the government's interest in shielding its deliberations "cannot be a bar to discovery." *Id.* (collecting cases).

Here, Plaintiffs have specifically alleged that Defendants adopted the Mandate out of animus toward religion rather than for the reasons provided, *see* Compl. ¶¶ 163-167, and thus Defendants' intent in enacting the regulations at issue is directly relevant to Plaintiffs' claims that the law is not generally applicable but specifically targeted at particular religious viewpoints. *See, e.g., Ward v. Polite*, 667 F.3d 727, 738 (6th Cir. 2012) ("If the law appears to be neutral and generally applicable on its face, but in practice . . . is a veiled cover for targeting a belief or a faith-based practice, the law satisfies the First Amendment only if it 'advance[s] interests of the highest order and [is] narrowly tailored in pursuit of those interests.'" (quoting *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993))); *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1294 (10th Cir. 2004) ("A rule that is discriminatorily motivated and applied is not a neutral rule of general applicability."); *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 165-67 (3d Cir. 2002) ("[I]f the law is not neutral (*i.e.*, if it discriminates against religiously motivated conduct) or is not generally applicable (*i.e.*, if it proscribes particular conduct only or primarily when religiously motivated), strict scrutiny applies and the burden on religious conduct

JONES DAY

The Hon. Brian M. Cogan
August 10, 2012
Page 9

violates the Free Exercise Clause unless it is narrowly tailored to advance a compelling government interest.").

  While Plaintiffs are being impacted *presently* by the currently enacted regulations, they do not have the luxury to "wait" to marshal the facts necessary to present their constitutional and statutory claims to the Court. The discovery process takes time. Defendants offer no reason why, despite the ongoing impact of the challenged regulations, Plaintiffs should not only be forced to suffer that impact, but also be barred from preparing their merits case for this Court to decide.

### IV. CONCLUSION

  For the foregoing reasons Plaintiffs respectfully request that Defendants' request for a stay of discovery pending disposition of their motion to dismiss be denied.

Respectfully submitted,

*Todd R. Geremia*

Todd R. Geremia

Enclosures

cc: Counsel of record (by e-mail)